IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:18-cr-91 |
| | ) | |
| RONDALE LATTE CLAUD, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Response in Opposition to Defendant's Petition for
Habeas Relief Under *Rehaif v. United States***

The defendant has filed a habeas petition under 28 U.S.C. § 2255 arguing that his conviction for possessing ammunition while a convicted felon is defective in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  (ECF No. 34.)

The defendant cannot make either the actual-innocence or cause-and-prejudice showing necessary to reach the merits of his procedurally defaulted claim.  The Court should therefore deny the petition.

**Factual and Procedural Background**

On January 31, 2019, the defendant appeared before Magistrate Judge Lawrence R. Leonard, having previously waived his Right to Rule 11, and pleaded guilty to a one-count criminal indictment.  (ECF Nos. 15-20.)  The indictment charged him with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g).  (ECF No. 1.)

According to the Statement of Facts submitted as part of his plea, in the early morning hours of June 26, 2018, the defendant got into a verbal altercation with another individual and a store clerk in the parking lot of a convenience store gas station, and the defendant made threatening remarks to others.  (ECF No. 17 at ¶ 1-2.)  The defendant got into a vehicle with his son and two other individuals, brandished a firearm out of the passenger window, pointed the gun at the clerk,

and then fired eight shots into the air as the vehicle drove out of the parking lot. (*Id.* at 1, 3.) Police recovered eight Sig 9 millimeter cartridge casings from the parking lot. (*Id*. at ¶ 4.) The defendant was a prior convicted felon, who did not subsequently have his rights restored, and it was therefore unlawful for him to be in possession of ammunition on that date. (*Id*. at ¶ 5.)

According to the Statement of Facts, the acts "taken by defendant, RONDALE LATTE CLAUD, were done willfully, knowingly, intentionally, and unlawfully and not by accident, mistake or other innocent reason." (*Id.* ¶ 8.) The defendant, and his counsel, signed the statement of facts. (*Id.* p. 3.) The Court accepted the defendant's guilty plea. (ECF No. 18.) On May 3, 2019, this Court imposed a sentence of 210 months to be served consecutively with the defendant's Circuit Court of Newport News felony probation violation sentence (case No. CR0900173-01), five years of supervised release, and a $100 special assessment. (ECF Nos. 28-29.)

The defendant filed his habeas petition on June 16, 2020. (ECF No. 34.) The sole argument in the petition is that the defendant's § 922(g) conviction is invalid under *Rehaif*. There, the Supreme Court held that § 922 does not criminalize a defendant's "innocent mistake" and that a conviction under § 922(g) therefore requires "knowledge of [the] status" that renders firearm possession unlawful. 139 S. Ct. at 2197; *see also Id.* at 2198 (explaining that § 922(g) does not criminalize possession of a firearm by a convicted felon who was "sentenced only to probation … [and] who [did] not know that the crime [was] 'punishable by imprisonment for a term exceeding one year'"). The defendant's habeas petition now argues that his plea suffered from "structural error," and requests "relief as necessary" in the form of vacating his conviction. (ECF No. 34 at 7.)

## Argument

For the reasons appearing below, the Court should deny the habeas petition.

**I.     The petition is not signed by the defendant and raises concerns about a potential conflict-of-interest.**

The defendant's petition raises certain procedural questions which the Court may wish to address before resolving the defendant's claims on the merits.

First, the defendant's submission does not contain any document signed by the defendant himself making the assertions in the pleading under penalty of perjury.  Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings requires that motions pursuant to 28 U.S.C. § 2255 "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant."[1] The factual assertions in a § 2255 must be ones that a defendant is willing personally to support under penalty of perjury.  The Advisory Committee Notes to Rule 2(b) explain:  "The Committee envisions that the courts will apply third-party, or 'next-friend,' standing analysis in deciding whether the signer was actually authorized to sign the petition on behalf of the petitioner." Advisory Comm. Notes, 2004 amendment.[2]  The "'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest."  *Hamdi v. Rumsfeld*, 294 F.3d 598, 603 (4th Cir. 2002) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990)).  "[T]he availability of next friend standing as an avenue into federal court is strictly limited ...."  *Id.*  To establish "next friend" standing:

---

[1] The Rules governing Section 2255 Proceedings are available at https://www.uscourts.gov/sites/default/files/rules_governing_section_2254_and_2255_cases_in_the_u.s._district_courts_-_dec_1_2019.pdf (as amended Dec. 1, 2019).

[2] The Advisory Committee Notes are available at https://uscode.house.gov/view.xhtml?req=granuleid:USC-prelim-title28-section2255&num=0&edition=prelim.

> First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. The burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.

*Id.* (quoting *Whitmore*, 495 U.S. at 163–64).

The current petition does not offer a basis for concluding that defense counsel qualifies as a "next friend" for the defendant. The petition does not, for example, offer any reason why the defendant cannot sign a motion seeking relief under 28 U.S.C. § 2255, nor does it state that the defendant agrees to the factual assertions in the motion. *See Aguilar v. Bragg*, 463 F. App'x 333, 334 (5th Cir. 2012); *Francis v. Warden, FCC Coleman-USP*, 246 F. App'x 621, 623 (11th Cir. 2007); *Tate v. United States*, 72 F. App'x 265, 267 (6th Cir. 2003). Accordingly, the Court should direct counsel to file a § 2255 motion that is signed under penalty of perjury by the defendant or a statement signed by the defendant under penalty of perjury indicating that he has reviewed the § 2255 motion and the contents of such motion are true and correct.

Second, the defendant's petition was filed by the same counsel who represented him during earlier proceedings, the Office of the Federal Public Defender. This raises a potential conflict-of-interest issue. A defendant's failure to raise a claim alleging ineffective assistance of trial counsel in his first habeas petition may result in a waiver of that claim. *See, e.g.*, *Fowler v. Joyner*, 753 F.3d 446, 466 (4th Cir. 2014) (stating that certain ineffectiveness claims were "waived by Fowler's failure to raise the issue below"). At the same time, a defendant's trial counsel is not in a position to assert his or her own ineffectiveness during prior proceedings on collateral review. Accordingly, the Court may wish to direct defense counsel to provide a written statement demonstrating that the defendant has been advised of any conflict-of-interest issues here and that

the defendant nonetheless consents to proceed with his current counsel in these habeas proceedings.

## II.   The government is moving to expand the record to include evidence of the defendant's knowledge of his prohibited status.

Alongside this opposition to the defendant's habeas petition, the government is moving to expand the record under Rule 7 of the Rules Governing § 2255 Proceedings. More specifically, the government seeks to expand the record to include a document entitled "Federal Firearms Prohibition Memo" from the Virginia Department of Corrections Division of Probation and Parole Services. The document is signed by the defendant and informs him that (a) federal law prohibits convicted felons from possessing firearms, (b) he is a convicted felon, (c) he does not have the privilege to hunt with, purchase, own, carry, or transport a firearm:

> (Federal Firearms Prohibition Memo) United States Code Section 922G became law on November 1, 1987. This law makes the receipt, possession, or transportation of any firearm by a person convicted of a felony in a Federal or State Court punishable as a felony. The penalty for violation of this is a fine of not more than $250,000 or imprisonment for not more than five (5) years or both. Therefore, as a felon, you do not have the privilege to hunt with a firearm and certainly do not have the privilege to purchase, own, carry, or transport a firearm. You are being advised of this law for your protection. Should you violate this law, you will bear full responsibility.

(10/11/2017 Federal Firearms Prohibition Memo). The defendant, in the presence of a witness, signed and dated that memo on October 11, 2017. The defendant thus, in writing, acknowledged his felon status and that he was fully aware of the resulting federal prohibition on him possessing a firearm. Moreover, he signed this document less than nine months prior to possessing the ammunition which led to the conviction he now challenges.

For the reasons appearing below, this record more than establishes that the defendant was aware of his status as a felon. That knowledge, in turn, forecloses a *Rehaif* claim.

### III.    The defendant cannot overcome his procedural default.

As an initial matter, the government accepts that *Rehaif* is retroactive on collateral review. *Rehaif* altered the elements that must be proven to sustain a conviction under § 922(g), meaning that *Rehaif* narrowed the "class of persons that the law punishes." *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016) (applying retroactivity principles under *Teague v. Lane*, 489 U.S. 288 (1989)). The Supreme Court has previously recognized that a defendant may bring a habeas petition challenging his conviction in similar circumstances. *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 346 (1974) (holding that a habeas petition is cognizable when, based on a change in the law subsequent to his conviction, a defendant claims that his "conviction and punishment are for an act that the law does not make criminal").

Even so, by not raising his constitutional attack on his § 922(g) conviction before that conviction became final, the defendant procedurally defaulted it. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012). That default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S. at 621). The defendant cannot satisfy either standard.[3]

### A.    The defendant cannot demonstrate actual innocence.

To begin, the defendant is not actually innocent of violating § 922(g). "To establish actual

---

[3] Some defendants have tried to argue that procedural-default rules do not apply to their cases because district courts lack jurisdiction to adjudicate criminal charges where a required element is missing from the indictment. That is wrong. *See United States v. Moore*, 954 F.3d 1322, 1336 (11th Cir. 2020) ("[T]he law is clear: the omission of an element in an indictment does not deprive the district court of subject matter jurisdiction."); *United States v. Balde*, 943 F.3d 73, 91 (2d Cir. 2019) (holding that an indictment being defective under *Rehaif* "does not mean that the indictment fails to allege a federal offense in the sense that would speak to the district court's power to hear the case.").

innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

The defendant cannot make this showing. Record evidence indicates that the defendant was aware that he was a felon at the time he unlawfully possessed the ammunition giving rise to his § 922(g) conviction. That is sufficient to defeat a *Rehaif* claim. *See Rehaif*, 139 S. Ct. at 2200 (holding only that the government has to prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm"). *Rehaif* nowhere held that the government has to prove the defendant's knowledge of the unlawfulness of possessing a firearm as a convicted felon, a burden normally reserved for statutes requiring proof of "willfulness." *Cheek v. United States*, 498 U.S. 192, 199 (1991). Thus, even after *Rehaif*, a § 922(g) conviction does not require knowledge of the unlawfulness of a possessing a firearm as a convicted felon, but instead only knowledge that one *is* a felon. *See, e.g.*, *United States v. Maez*, 960 F.3d 949, 954 (7th Cir. 2020) ("We do not read *Rehaif* as imposing a willfulness requirement on § 922(g) prosecutions."); *United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019) (*Rehaif* requires that a defendant "know only that he had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time he possessed the firearms"); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) ("*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code.").

Here, the record demonstrates that the defendant was aware of his prohibited status at the time of the offense.

*First*, the defendant endorsed the Statement of Facts, which specified that the "acts taken

by defendant, RONDALE LATTE CLAUD, were done willfully, knowingly, intentionally, and unlawfully and not by accident, mistake or other innocent reason."  (ECF No. 17 ¶ 8.)  Those "acts" include those in the preceding paragraphs of the Plea Agreement, including that "CLAUD is a prior convicted felon who did not subsequently have his rights restored.  Because of this status, it was unlawful for CLAUD to be in possession of a firearm or ammunition on June 26, 2018."  (ECF No. 17 at ¶ 5.)

*Second*, the defendant's state record as documented in the PSR demonstrates that he was aware of his prohibited felon status because on eight separate occasions, the defendant was sentenced to a total sentence that exceeded more than one year on eight separate felonies.  In six of those eight felony conviction sentences, the defendant actually served more than one year of *active* incarceration.  The PSR shows that the defendant received a sentence well in excess of one year on all eight prior felony convictions.

   i.   On November 3, 1999, the defendant was convicted of felony Attempted Rape in the Circuit Court of Newport News, (case number CR99040944-00) and was sentenced to eight years' incarceration with six years suspended, 15 years of good behavior, and three years of supervised probation.  (PSR ¶ 36.)

  ii.   On April 17, 2001, the defendant was convicted of a felony probation violation, related to his underlying conviction for Attempted Rape in case number CR99040944-00, and was sentenced to six years' incarceration with all but time necessary to complete a program suspended, 15 years of good behavior, and three years of supervised probation.  *Id.*

 iii.   On May 7, 2002, the defendant was convicted of a felony probation violation, related to his underlying conviction for Attempted Rape in case number CR99040944-00, and was sentenced to six years' incarceration with four years suspended, 15 years of good behavior, and three years of supervised probation. *Id.*

  iv.   On January 21, 2004, the defendant was convicted of a felony probation violation, related to his underlying conviction for Attempted Rape in case number CR99040944-00, and was sentenced to two years and six months' incarceration with none suspended, and 15 years of good behavior.  *Id.*

v. On March 4, 2004, the defendant was convicted of felony Possession of Cocaine in the Circuit Court of Newport News, (case number CR04052593-00) and was sentenced to five years' incarceration with four years and ten months suspended, and five years of good behavior. (PSR ¶ 38.)

vi. On October 7, 2009, the defendant was convicted of felony Possession of Cocaine with Intent to Distribute in the Circuit Court of Newport News, (case number CR09001073-00) and was sentenced to eight years' incarceration with five years and three months suspended, ten years of good behavior, and one year of supervised probation. (PSR ¶ 41.)

vii. On July 20, 2010, the defendant was convicted of felony Malicious Wounding in the Circuit Court of Newport News, (case number CR10000218-00) and was sentenced to 20 years' incarceration with 16 years and four months suspended, 20 years of good behavior, and two years of supervised probation. (PSR ¶ 42.)

viii. On July 20, 2010, the defendant was convicted of felony Use of Firearm in Commission of a Felony in the Circuit Court of Newport News, (case number CR10000220-00) and was sentenced to three years' incarceration with none suspended, to run consecutive to his Felony Malicious Wounding conviction in CR10000218-00. (PSR ¶ 42.)

The defendant served a total of at least 16 years and 1 month of active incarceration for his eight separate prior felony convictions.

*Third*, the supplemental state probation document provided by the United States which is endorsed by the defendant leaves no doubt that the defendant was put on notice of his felon status. On October 11, 2017, the defendant met with a Virginia Department of Corrections probation officer and signed the "Federal Firearms Prohibition Memo." In that document, the defendant was specifically informed of his status as a felon. "Therefore, <u>as a felon, you do not have the privilege to hunt with a firearm and certainly do not have the privilege-to purchase, own, carry or transport a firearm.</u> You are being advised of this law for your protection. Should you violate this law, you will bear full responsibility." (10/11/2017 Federal Firearms Prohibition Memo) (emphasis added). The defendant signed that memo on October 11, 2017, providing written documentation that he previously acknowledged his prohibited felon status to his probation officer. *See United States v. Payne*, — F.3d —, No. 19-2384, 2020 WL 3818914, at *3 (7th Cir. July 8, 2020) (holding, on

9

plain-error review, that prior "admonitions [about felon-in-possession limitations] would have made [the defendant] aware not only of his status, but also of the criminal prohibition against his possessing a firearm because of his status, more than is required to prove the *Rehaif* element").

To summarize, the defendant was previously convicted of eight prior felony convictions: five separate felony charges, and three felony probation violations. (PSR ¶¶ 36, 38, 41-42.) The defendant served two years of active incarceration for his 1999 state felony Attempted Rape conviction. (PSR ¶ 36.) The defendant served at least a combined four years and six months of additional active incarceration for his three different state felony probation violation convictions from 2001, 2002 and 2004. *Id.* The defendant served two years and nine months of active incarceration for his 2009 state felony Possession of Cocaine with Intent to Distribute conviction. (PSR ¶ 41.) The defendant served three years and eight months of active incarceration for his 2010 state felony Malicious Wounding conviction. (PSR ¶ 42.) The defendant served three years active incarceration for his 2010 state felony Use of Firearm in Commission of a Felony conviction. *Id.* These facts are incompatible with the defendant's current *Rehaif* claim. *See, e.g.*, *United States v. Raymore*, — F.3d —, No. 19-3703, 2020 WL 3956861, at *8 (6th Cir. July 13, 2020) (holding defendant could not show plain error after a jury trial in light of past felony convictions, including for being a felon-in-possession); *United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020) (stating that "there is little possibility that [a defendant] was ignorant of his status as a convicted felon" when he had previously been convicted of a felony sex offense and received a two-year suspended sentence); *United States v. Miller*, 954 F.3d 551, 560 (2d Cir. 2020) ("The PSR shows that Mack's prior conviction, for the unlawful theft and alteration of a firearm, resulted in a total effective sentence of ten years' imprisonment, with execution suspended after three years, which removes any doubt that Mack was aware of his membership in § 922(g)(1)'s class."); *United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019) (holding that defendant could not show plain error

necessary to vacate his guilty plea where the PSR indicated that he "had served a minimum of 18 years in prison before being arrested for possessing the firearm").

To be sure, there could be a defendant who, due to the unusual procedural posture of his case or the idiosyncratic nature of his sentence, might not have been aware that his underlying conviction was for a felony offense. *Rehaif* itself recognized as much. *See* 139 S. Ct. at 2198 (explaining that § 922(g) should not be read to criminalize gun possession where "a person … was convicted of a prior crime but sentenced only to probation … [and] does not know that the crime is '*punishable* by imprisonment for a term exceeding one year'" (quoting 18 U.S.C. § 922(g)(1)). But that is not this case, because here, the record indicates that the defendant was aware that he had previously convicted of a crime punishable by more than one year of incarceration. *See, e.g.*, *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020) (explaining that someone who spent more than ten years in prison for a prior offense could not "plausibly argue that he did not know his conviction had a maximum punishment exceeding a year"); *United States v. Mayo*, No. 4:12-cr-32-3 (JLK), 2020 WL 2476167, at *2 (W.D. Va. May 13, 2020) (holding that a defendant asserting a *Rehaif* claim had not made a viable claim of actual innocence where he "made no argument that he did not commit the crime alleged, and the record is devoid of any facts to support such an argument").

What's more, the record in this case demonstrates that the defendant was aware of the prohibition on convicted felons possessing firearms. That, too, makes it impossible for him to prove his actual innocence. On October 11, 2017, the defendant signed the Virginia Department of Corrections "Federal Firearms Prohibition Memo" which specifically informed him that federal law prohibits felons from possessing firearms, that he is a felon, and that he does not have the privilege to purchase, own, carry, transport, or hunt with a firearm. (10/11/2017 Federal Firearms Prohibition Memo.) *See United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) (holding, on

plain-error review, that prior "admonitions [about felon-in-possession limitations] would have made [the defendant] aware not only of his status, but also of the criminal prohibition against his possessing a firearm because of his status, more than is required to prove the *Rehaif* element"). The defendant is therefore not actually innocent of violating § 922(g)(1).

### B.    The defendant cannot show cause for his default.

The defendant also cannot show cause for his default.

One way to establish cause would be to argue that *Rehaif* was so novel that no reasonable litigant would have thought to challenge a § 922(g) conviction on the grounds that knowledge of one's prohibited status was an element of the offense.  But the Supreme Court has already explained that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  To the extent that an exception to this rule exists for truly novel claims, *see Reed v. Ross*, 468 U.S. 1, 16–17 (1984), that exception is too narrow to accommodate the defendant's case.

In determining whether a claim is novel enough to establish cause for a procedural default, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all."  *Smith v. Murray*, 477 U.S. 527, 537 (1986).  Any novelty argument here is incompatible with both *Bousley* and binding Circuit precedent.  In *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001), for example, the Fourth Circuit concluded that an *Apprendi* claim was not novel enough to excuse a procedural default, favorably citing a Seventh Circuit case reaching the same conclusion as to a defendant sentenced in 1992, a full eight years before *Apprendi* was decided.  *Id.* at 145–46 (citing *United States v. Smith*, 241 F.3d 546 (7th Cir. 2001)).  *Sanders* cautioned that liberally construing arguments as novel enough to satisfy the cause-and-prejudice exception to procedural default

would threaten to a create a world in which "[c]ollateral review would come … to serve as an all-purposive receptacle for claims which in hindsight appear more promising than they did at the time of trial." *Id.* at 146.

The same reasoning applies here. Had the defendant wanted to raise a *Rehaif*-type claim about his § 922(g) conviction, he was entirely capable of doing so—just like a defendant who wanted to raise an *Apprendi*-style claim in 1992. *Accord Dugger v. Adams*, 489 U.S. 401, 409–10 (1989) (concluding that a claim was not novel where "the legal basis for a challenge was plainly available"); *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) ("If the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." (citation and internal quotation marks omitted)). And indeed, the Fourth Circuit had previously rejected a *Rehaif*-type claim in 1978, underscoring that the interpretation of § 922(g) proffered by the defendant in *Rehaif* was not novel at all. *See United States v. Williams*, 588 F.2d 92, 92–93 (4th Cir. 1978) (per curiam). Consistent with *Sanders*, the defendant's failure to raise such a claim earlier is therefore not excusable on novelty grounds. *See Mayo*, 2020 WL 2476167, at *2 ("Given the plethora of challenges levied against § 922(g), Petitioner's claim does not qualify as novel." (citing *Williams* and other circuit-level cases)).

Another way to establish cause for a procedural default would be to show that defense counsel performed deficiently by failing to raise a particular claim. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). While the defendant has not yet linked his *Rehaif* claim to a claim of ineffective assistance of counsel, the government notes that doing so in an attempt to overcome his procedural default would be unavailing. The general rule is that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996); *see also United States v. Dyess*, 730 F.3d 354, 363

(4th Cir. 2013) (holding that a defense attorney's failure to anticipate *Apprendi* did not constitute deficient performance). That principle applies equally to *Rehaif* claims. *See United States v. Finley*, 805 F. App'x 823, 827 (11th Cir. 2020) (rejecting *Rehaif*-based ineffectiveness claim because "precedent clearly forecloses an ineffective-assistance-of-counsel claim based on failure to raise an objection that would not succeed under current law, but which could succeed depending on a forthcoming Supreme Court decision"); *United States v. Sumlin*, No. 18-CR-682 (SHS), 2020 WL 3318207, at *5 (S.D.N.Y. June 18, 2020) ("[A]n attorney is not required to forecast changes or advances in the law in order to provide effective assistance." (quoting *United States v. Kimber*, 777 F.3d 553, 563 (2d Cir. 2015))).

### C. The defendant cannot show prejudice resulting from his default.

Even if the defendant could establish cause for his procedural default based on *Rehaif*'s purported novelty, he still cannot show prejudice.

When a defendant has "not attempt[ed] to withdraw his guilty plea in the district court, [the Fourth Circuit] review[s] his plea challenge for plain error." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc) (citing *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018)). A defendant satisfies the plain-error standard by demonstrating "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018). On collateral review, the prejudice standard is more exacting still. *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting "use of the 'plain error' standard to review [a] § 2255 motion" and stating "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"); *accord United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994) ("hold[ing] that the *Frady* cause and prejudice standard applies to … collateral challenges to unappealed guilty pleas").

14

When raising a forfeited attack on a guilty plea, a defendant can only demonstrate that an error affected his substantial rights (or establish prejudice on collateral review) by "show[ing] a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). A defendant must satisfy this standard even if he establishes that the district court committed an error in his plea colloquy. *See, e.g.*, *United States v. Cannady*, 283 F.3d 641, 647–48 (4th Cir. 2002). Here, the defendant cannot make the requisite showing.

The evidence of the defendant's knowledge of his prohibited status was overwhelming. As summarized above, that evidence included (i) five prior felony convictions in Virginia state court, plus and an additional three prior felony probation violation convictions, (ii) the fact that on six separate occasions he served active prison sentences of one year or longer (a two-year sentence, another two year sentence, one two year and six month sentence, another two year sentence, one two year and nine month sentence, one three year and eight month sentence, and a three year sentence) thereby making plain that those offenses were punishable by more than one year of incarceration, (iii)  the fact that the defendant signed a state probation "Federal Firearms Prohibition Memo" that specifically informed him of his felon status and that he was prohibited from possessing firearms under Federal law, and (v) the Statement of Facts, which indicates that the defendant acted willfully, knowingly, intentionally, and unlawfully and not by mistake or accident, and acknowledged that he was a previously convicted felon that had not had his rights restored.

Because the government clearly would have been able to prove the defendant's knowledge of his prohibited status, the defendant's decision whether or not to plead guilty would not have been affected by the new rule announced by *Rehaif*. He thus cannot show prejudice sufficient to overcome his procedural default. As the Fifth Circuit has explained:

> Demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason:  Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew. So it is hard to imagine how their conviction or guilty plea was prejudiced by any error under *Rehaif*.

*United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020); *see also, e.g.*, *United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020) ("Had the government been required to prove that Bates knew he was a felon at the time he possessed a firearm, there is overwhelming evidence to show that it would have easily done so…. Had Bates known that the government needed to prove that he knew he was a felon, the probability is virtually zero that it would have changed his decision to plead guilty.").

The defendant may argue in reply that this Court, in conducting its prejudice analysis, should consider only the evidence introduced at trial and should not consider, for example, evidence in the PSR or elsewhere that bears on the defendant's knowledge of his prohibited status. With respect to cases on direct appeal, at least six circuits have disagreed in the context of plain-error review.  *See United States v. Lara*, — F.3d —, 2020 WL 4668535, at *13 (1st Cir. Aug. 12, 2020) ("[T]he government had available to it evidence of Williams's four recent and serious convictions from Maine, the judgment and commitment order for those convictions, and Williams's acknowledgement in that order that he had received it and understood his sentence."); *United States v. Owens*, 966 F.3d 700, 706–07 (8th Cir. 2020) ("The full record shows that the government could have offered reliable evidence of Owens's criminal history at trial if it had been relevant under the prevailing law."); *United States v. Johnson*, 963 F.3d 847, 852 (9th Cir. 2020) (holding that it is permissible to "review the entire record on appeal—not just the record adduced at trial—in assessing whether [a defendant] has satisfied the fourth prong of plain-error review"); *United States v. Staggers*, 961 F.3d 745, 756 (5th Cir. 2020) (concluding that, in light of extra-record evidence, "the district court's error [did] not significantly affect the fairness, integrity, or

public reputation of judicial proceedings, so we will not exercise our discretion to correct it"); *United States v. Maez*, 960 F.3d 949, 959–63 (7th Cir. 2020) (holding that, in light of extra-record evidence, the defendant could not show prejudice sufficient to satisfy the third-prong of plain-error review and also failed on the fourth prong of plain-error review); *United States v. Miller*, 954 F.3d 551, 559–60 (2d Cir. 2020) ("We will not penalize the government for its failure to introduce evidence that it had but that, prior to *Rehaif*, it would have been precluded from introducing.") (explaining that denying relief did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings"). Given that the cause-and-prejudice standard is more exacting than plain-error review, *see Frady*, 456 U.S. at 166, it follows *a fortiori* that this Court can consider such evidence in a habeas proceeding.

This is not to say that no defendant will ever be able to establish *Rehaif* prejudice. For example, the Seventh Circuit has held that in a prosecution for possessing a firearm after having been convicted of a crime of domestic violence under 18 U.S.C. § 922(g)(9), a defendant could show plain error on direct appeal where the defendant did not have a lawyer in state court, the state charging instrument cited a non-existent statute, and the guilty-plea questionnaire was "incomplete and unclear." *United States v. Triggs*, 963 F.3d 710, 716 (7th Cir. 2020). But any similar concerns are absent here. The defendant therefore cannot establish prejudice sufficient to escape his procedural default.

## IV.    Any *Rehaif* error was harmless.

In addition, any *Rehaif* error here was harmless.

Once direct review is completed, "a presumption of finality and legality attaches to the conviction and sentence," *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (citation omitted), and courts are "entitled to presume" that the defendant's conviction and sentence are lawful, *United States v. Frady*, 456 U.S. 152, 164 (1982). That "presumption of regularity ... makes it appropriate

to assign a proof burden to the defendant" on collateral review. *Parke v. Raley*, 506 U.S. 20, 31 (1992); *see Hawk v. Olson*, 326 U.S. 271, 279 (1945) (explaining that a prisoner necessarily "carries the burden in a collateral attack on a judgment").

The Fourth Circuit and other courts have agreed that a defendant carries the burden of showing a constitutional violation. *See, e.g.*, *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) ("[T]he district court must determine whether the [§ 2255 movant] has met his burden of showing that this sentence is unlawful on one of the specified grounds."); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon the petitioner to establish by a preponderance of evidence that he did not intelligently waive his right to assistance of counsel."); *accord United States v. Brown*, 957 F.3d 679, 690 (6th Cir. 2020) ("A petitioner bears the burden of proof in a § 2255 proceeding ….").

An error is harmless on collateral review unless it had a "substantial and injurious effect" on the defendant's conviction. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *accord Barnes v. Thomas*, 938 F.3d 526, 533 n.3 (4th Cir. 2019) (explaining that the *Brecht* standard is a "'less onerous harmless-error standard' than the requirement on direct appeal that an error be proven 'harmless beyond a reasonable doubt'" (quoting *Brecht*, 507 U.S. at 623)); *cf. Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("In a collateral proceeding, the test is different.  For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" (quoting *Brecht*, 507 U.S. at 637; *United States v. Lane*, 474 U.S. 438, 449 (1986))).

The defendant here cannot meet his burden to show that any *Rehaif* error had a "substantial and injurious effect" on his proceedings.   As discussed supra, ample facts demonstrate the defendant's knowledge of his felon status.  Proof of such knowledge forecloses

18

any meritorious *Rehaif* claim.

**V.    Any error here, even if structural, does not require automatic *vacatur* of the defendant's guilty plea.**

The government notes that in *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), the Fourth Circuit recently held that failure to advise a defendant facing a felon-in-possession charge during a plea colloquy of the requirement to prove awareness of his prohibited status, as required by *Rehaif*, was a structural error requiring *vacatur* of the plea, even on plain-error review.   *See Gary*, 954 F.3d at 202–03.   *Gary* does not, however, require the grant of habeas relief on collateral review.

The United States unsuccessfully sought rehearing en banc in *Gary* and agrees with the increasing number of courts of appeals that have expressly rejected *Gary* since it was decided.[4] *See, e.g.*, *United States v. Coleman*, 961 F.3d 1024, 1029 (8th Cir. 2020) (holding that a *Rehaif* error in plea proceedings is not structural because it "does not defy harmless-error standards and the resulting harm is not indeterminate"); *United States v. Trujillo*, 60 F.3d 1196, 1205 (10th Cir. 2020) ("[W]e are not persuaded we should expand the limited number of structural errors to include those in which a district court fails to inform a defendant of the knowledge-of-status element of a felon in possession charge under 18 U.S.C. § 922(g)(1)."); *United States v. Hicks*, 958 F.3d 399, 401 (5th Cir. 2020) ("[W]e have not considered *Rehaif* errors to warrant automatic

---

[4] *See United States v. Gary*, 963 F.3d 420, 420 (4th Cir. 2020) (Wilkinson, J., concurring in denial of rehearing en banc) ("I concur in the denial of rehearing en banc for one reason and one reason only.  The panel's holding is so incorrect and on an issue of such importance that I think the Supreme Court should consider it promptly.").

reversal.").[5]

But even accepting that *Gary* is binding in this Circuit for *Rehaif* claims raised on direct appeal, *Gary* nonetheless has important limitations on its scope. *Gary* did not purport to address how structural errors are treated on collateral review. But when a defendant has procedurally defaulted a claim of structural error, the defendant must show actual prejudice, either to satisfy the cause-and-prejudice standard or to demonstrate that the error was not harmless. *See, e.g.*, *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) ("[P]etitioners must show actual prejudice to excuse their default, even if the error is structural." (citing *Francis v. Henderson*, 425 U.S. 536, 542 n.6 (1976); *Davis v. United States*, 411 U.S. 233, 245 (1973)); *Hunt v. Houston*, 563 F.3d 695, 704 n.2 (8th Cir. 2009) ("[A] finding of structural error does not obviate a petitioner's obligation to show prejudice when attempting to overcome a state procedural default."); *Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005) ("[E]ven structural errors are subject to state procedural bars."); *Ward v. Hinsley*, 377 F.3d 719, 725–26 (7th Cir. 2004) ("[T]he procedural default doctrine does not seek to distinguish claims of trial error from claims of structural error.").

One court of appeals has stated that, when a defendant has a claim of structural error, such a claim obviates the need to show prejudice on collateral review. *See Owens v. United States*, 483 F.3d 48, 65–66 (1st Cir. 2007). But the Supreme Court expressly abrogated *Owens* in *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017). *Weaver* explained that the type of error addressed

---

[5] The Eleventh Circuit has rejected *Gary*'s reasoning without expressly citing it. *See United States v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020) ("Bates cannot credibly contend that he would have changed his decision to plead guilty and, instead, have opted for the government to prove that he knew he was a felon by offering evidence related to all seven of his prior convictions.") (declining to find plain error where defendant raised a forfeited *Rehaif* attack on his guilty plea on direct appeal).

The Sixth Circuit held, pre-*Rehaif*, that constitutional defects in plea proceedings are not necessarily structural. *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 410–11 (6th Cir. 2009) (assessing such an error under the *Brecht* harmlessness standard).

by *Owens*—a denial of a defendant's right to a public trial—does not necessarily "render[] a trial fundamentally unfair in every case." 137 S. Ct. at 1910. *Weaver* went on to hold that the defendant there had not shown sufficient prejudice in the context of an ineffective assistance of counsel claim to justify habeas relief. In doing so, *Weaver* distinguished structural errors raised on direct appeal from those raised for the first time in a collateral attack. As *Weaver* explained, when structural errors are reversed on direct appeal, "there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost." *Id*. at 1912. But when such claims are raised in collateral review, "the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases." *Id*. The Supreme Court's rejection of the First Circuit's approach to prejudice in a case involving structural error cautions against extending *Gary*'s logic to defaulted *Rehaif* claims raised for the first time on collateral review.

Indeed, even on direct appeal, the Supreme Court has made clear that structural errors do not require automatic *vacatur* on plain-error review. In *United States v. Cotton*, 535 U.S. 625 (2002), for example, the Supreme Court considered how to evaluate a forfeited *Apprendi* claim on plain-error review where the indictment failed to charge a required drug weight. Even assuming that the charging error was structural, *Cotton* held that the defendant's conviction remained valid because the evidence of drug weight at trial was "overwhelming." *Id.* at 622–23. For that reason, failing to correct the *Apprendi* error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* The same reasoning applies with even more force on collateral review, where the defendant must show more than plain error to obtain relief. *See Frady*, 456 U.S. at 166. Cases holding that, on direct appeal, courts may consider evidence outside the record in conducting a plain-error assessment reinforce the conclusion that a *Rehaif* error should not result in automatic habeas relief. *See supra* at 16 (citing *Owens*, 966 F.3d at 706–07; *Johnson*,

963 F.3d at 852; *Staggers*, 961 F.3d at 756; *Maez*, 960 F.3d at 959–63; *Miller*, 954 F.3d at 559 n.23).

Here, of course, the evidence of defendant's knowledge of his prohibited status is strong. Eight prior felony convictions with a total sentence exceeding one year, and six prior sentences where the defendant served active incarceration of one year or more served show the defendant had knowledge of his prohibited felon status. Additionally, the specific advisement of his felon status and resulting federal firearm prohibition contained in the 2017 state probation "Federal Firearms Prohibition Memo" provides written documentation that he was aware of his felon status. And all of this is to say nothing of the defendant's Statement of Facts, which specifically states that the defendant is a prior convicted felon, and in which the defendant admits to acting willfully, knowingly, intentionally, and unlawfully and not by accident or mistake.

The defendant's procedural default therefore remains fatal to his habeas claim.

## VI.    Even if the Court were to grant the defendant's habeas petition, the appropriate remedy is not a judgment of acquittal.

Under 28 U.S.C. § 2255, when a district court concludes that habeas relief is appropriate, "the court shall vacate and set the judgment aside and shall [i] discharge the prisoner [ii] or resentence him [iii] or grant a new trial [iv] or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b) (bracketed text added). In the words of the Fourth Circuit, a grant of habeas relief thus necessarily results in "one of the following:  (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence." *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007). A district court acts within its discretion in determining "the form of relief [it] awards to a successful § 2255 petitioner." *Id.* at 667 (citing *United States v. Torres-Otero*, 232 F.3d 24, 29–30 (1st Cir. 2000); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)). Irrespective of the

remedy selected, "the goal of § 2255 review is to place the defendant 'in exactly the same position he would have been' had there been no error in the first instance." *Id.* at 665 (quoting *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir. 1996)).

Because the defendant attacks the validity of his plea, the grant of habeas relief would not result in a judgment of acquittal but rather *vacatur* of the plea.  Generally speaking, the defendant would then have the right to plead anew or go to trial.  *See, e.g.*, *United States v. Carr*, 271 F.3d 172, 180 (4th Cir. 2001).  If the Court grants habeas relief, it should therefore set a new trial date and give the defendant the option of pleading guilty anew.

### Conclusion

The defendant can make neither the actual-innocence nor cause-and-prejudice showing necessary to overcome his procedural default.  The Fourth Circuit's opinion in *Gary*, which addressed a case on direct appeal, does not excuse the defendant from satisfying these requirements on collateral review.  The Court should therefore deny his habeas petition.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____

Ryan B. Bredemeier  85875
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:    (703) 299-3700
Fax:        (703) 299-3980
Email:    Ryan.Bredemeier@usdoj.gov

**Certificate of Service**

I hereby certify that on August 17, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.


By: _____/s/_____

Ryan B. Bredemeier  85875
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:    Ryan.Bredemeier@usdoj.gov